## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| DOVIA CHANDLER, Individually and as Personal Representative for the Estate of MARK CHANDLER, deceased; and GLEN CHANDLER; and TRACY CHANDLER, | **CV-23-09-BU-BMM** |
| Plaintiffs. | |
| vs. | **ORDER** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and DOES 1-3, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Dovia Chandler ("Dovia"), individually and as the personal representative of the estate of Mark Chandler ("Mark"), Glen Chandler ("Glen"), and Tracy Chandler ("Tracy") (collectively, "Plaintiffs") have brought a diversity suit against Defendant State Farm Insurance Company ("State Farm"), asserting claims for breach of contract, insurance bad faith, bodily injury, and punitive damages. (Doc. 1.) Dovia resides in Arkansas, and Glen and Tracy are residents of Montana. State Farm's headquarters are in Bloomington, Illinois. (Doc. 8 at 15.) State Farm has moved to transfer venue to the Western District of Arkansas. (Doc. 6.)

1

## BACKGROUND

Dovia, while a resident of Hot Springs, Arkansas, purchased two automobile insurance policies from State Farm. (Doc. 8 at 7.) The policies listed Dovia as the named insured and Mark as a driver. (Doc. 8 at 7.) The policies included underinsured motorist coverage with a limit of $100,000 per person and an aggregate limit of $300,000 per accident. (Doc. 8 at 7); (Doc. 9-2.) The policies included a choice of law provision, designating application of Arkansas law to interpretation of the policies' terms and conditions. (Doc. 8 at 8.) Dovia used an Arkansas agent to negotiate and purchase the policies, and the policies were issued in Arkansas.

Mark visited his daughter, Tracy, in Montana in August 2022. (Doc. 8 at 7.) Mark sustained fatal injuries during a traffic accident in Anaconda on August 8, 2022: a vehicle struck him as he walked across a street. (Doc. 8 at 7.) Mark died on August 11, 2022. (Doc. 8 at 7.) The vehicle driver's insurance policy, issued through Travelers Insurance, paid Dovia the policy limits following submission of her third-party claims. (Doc. 8 at 8.)

Dovia, individually, as personal representative of Mark's estate, and on behalf of Tracy and Glen, then submitted claims, including personal injury claims, to State Farm under her policy's underinsured motorist coverage. Dovia demanded the stacked aggregate limit of her policies of $600,000. (Doc. 8 at 8.) State Farm declined to stack the limits and instead paid Plaintiffs the $100,000 underinsured

motorist coverage per person limit as to Mark only. (Doc. 8 at 9); (Doc. 9-3.) It appears that State Farm did not address Dovia's, Tracy's, and Glen's personal injury claims for negligent infliction of emotional distress. (Doc. 9-3.)

Plaintiffs then filed suit in this Court, asserting bodily injury, breach of contract, bad faith, and punitive damages claims. (Doc. 1.) Plaintiffs seek to stack the benefits of Dovia's policies as well as coverage for their individual negligent infliction of emotional distress claims. (Doc. 1.) State Farm, as previously explained, now asks the Court to transfer this matter to the Western District of Arkansas. (Doc. 6.)

## LEGAL STANDARD

A plaintiff may file a civil action in any of the following judicial districts: 1) one "in which any defendant resides, if all defendants are residents of the state in which the district is located;" 2) one "in which a substantial part of the events or omissions giving rise to the claim occurred;" or, if neither applies, 3) one "in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.SC. § 1391(b).

A district court may transfer an action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The district court retains discretion to determine motions for transfer under § 1404(a) according to an "individualized,

case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The court must weigh a combination of factors when evaluating the propriety of a venue transfer. Those factors frequently include the following: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99 (citations omitted). Courts also may consider whether there exists a "local interest" in either of the forums. The weight afforded to these factors also remains within the sound discretion of the Court. *See, e.g.*, *Commodity Futures Trading Commn. v. Savage,* 611 F.2d 270, 279 (9th Cir.1979).

A determination on a change in venue contains a two-part analysis. A court first determines whether the action could have been brought in the requested venue. *See Hillerich & Bradsby Co. v. ACE Am. Ins. Co.*, 2012 WL 2359488, *1 (D. Mont. June 20, 2012). The Court then determines whether the change of venue would serve the interests of justice and provide convenience for the parties and witnesses. *Id.*

The moving party bears the burden of proof to show why the forum should be changed. *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). The party seeking transfer also must make a "strong showing" that the factors weigh in favor of a change in venue. *Id.*

## DISCUSSION

## I.   Whether the Western District of Arkansas represents an appropriate venue for this action

The Court first must determine whether Plaintiffs could have brought this action in the Western District of Arkansas. Venue in diversity actions proves proper where a substantial portion of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). State Farm argues that Plaintiffs could have brought this suit in the Western District of Arkansas because Plaintiffs' claims against State Farm do not arise from Mark's accident itself. They instead arise from State Farm's handling, and denial, of Plaintiffs' demand for stacked coverage. State Farm contends that the claims stem from coverage under an Arkansas policy, issued to an Arkansas resident to insure a vehicle garaged in Arkansas, that requires application of Arkansas law. (Doc. 8 at 12.) The Court agrees with State Farm's position.

Plaintiffs submitted to State Farm claims for negligent infliction of emotional distress, but a significant portion of the dispute before the Court appears to center on the availability of stacked coverage, the alleged denial of coverage for Plaintiffs'

standalone personal injury claims, and the alleged misrepresentations regarding the policy and its limits. (Doc. 1); (Doc. 9-1.) The district in which a consumer purchases their insurance policy, executing a contract with their insurer, and in which an insurer later denies coverage would represent a location where a substantial portion of the conduct underlying the claim occurred. These facts remain true even if the accident that caused Plaintiffs' alleged personal injuries of negligent infliction of emotional distress occurred in Montana. 28 U.S.C. § 1391(b)(2).

The Western District of Arkansas also could exercise personal jurisdiction over State Farm: State Farm conducted business in Arkansas by advertising, preparing, and selling insurance policies. State Farm also, as relevant here, was in the business of denying claims in Arkansas. Finally, diversity jurisdiction likely still exists in the Western District of Arkansas just as it does in the District of Montana: Plaintiffs are domiciled in Montana or Arkansas, and State Farm domiciles in Illinois. (Doc. 8 at 3.) State Farm has carried its burden at the first step of the Court's analysis. The Court next must determine whether State Farm has made the requisite "strong showing" that the *Jones* factors weigh in favor of transferring venue. *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). The Court will deny State Farm's Motion for the following reasons.

## II.    Whether transferring would serve the interests of justice and convenience of the parties and witnesses

State Farm, regarding the initial convenience factor, must show that a failure to change venue would result in a "severe inconvenience" for itself and the witnesses it wishes to call.  *Id.* A court should not transfer venue when the transfer would merely shift the inconvenience from the defendant to the plaintiff. *Decker Coal Co. v. Cmmw. Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

Plaintiffs contend that their witnesses, primarily people related to the accident such as police officers, the tortfeasor in the collision, and staff at medical treatment facilities, would suffer inconvenience if venue transfers. (Doc. 18 at 14.) They argue that a transfer would result in the impermissible shift of the inconvenience. (Doc. 18 at 14.) Plaintiffs ignore, however, that questions of coverage and contract interpretation likely will drive this case.

State Farm, for example, did not accept coverage for Plaintiffs' standalone personal injury claims and then dispute the value of the claims. State Farm instead allegedly denied the submitted claims altogether based on its apparent determination that Plaintiffs' personal injury claims did not fall within the coverage provided by Dovia's policies. (Doc. 9-4.) State Farm, also as to Plaintiffs' bad faith and contract claims, made a similar determination that the policies did not allow for stacked coverage and represented the same to Plaintiffs' counsel. (Doc. 9-4.) Witnesses to the accident itself likely would not prove necessary to resolve the dispute of whether the policies cover Plaintiffs' negligent infliction of emotional distress claims and

allow for stacking benefits. The convenience of Plaintiffs' identified witnesses, other than Glen and Tracy, likely may prove irrelevant to the issues before the Court.

State Farm nevertheless has not carried its burden of establishing severe inconvenience. State Farm contends that the Arkansas attorney who responded to Plaintiffs' demand letter may become a necessary witness, as would the agent who solicited and executed Dovia's policies. State Farm argues that the required travel of these witnesses to Montana would represent an inconvenience. (Doc. 8 at 22-23.) State Farm also argues that Dovia herself resides in Arkansas and would have to travel to Montana for depositions and trial should the Court decline to transfer venue. (Doc. 8 at 22-23.)

State Farm first ignores that Dovia, individually and as Mark's representative, chose to file suit in the District of Montana. (Doc. 1.) State Farm does not identify any other witnesses or issues of its own convenience, and, as the Court discussed, questions of coverage and contract interpretation likely would not require witness testimony. The need for the Arkansas counsel and the insurance agent to travel as witnesses related to the bad faith claim does not tip the balance in favor of a transfer. First, State Farm's witnesses "will presumably be willing to testify . . . regardless of inconvenience, precisely because [they are] . . . employee[s] [of State Farm]." *Grady v. CenturyLink Commc'ns, LLC*, 2015 WL 7566677, at \*7 (D. Mont. Nov. 24, 2015). Second, State Farm's three allegedly necessary Arkansas witnesses, Arkansas

counsel, agent, and Dovia, barely outnumber Plaintiffs' two allegedly necessary Montana witnesses, Glen and Tracy. This distribution does not constitute the sort of "severe" inconvenience that weighs in favor of transfer.

### A.    Location where the relevant agreements were negotiated and executed

State Farm has asserted that its insurance brokers negotiated and executed Dovia's policies in Arkansas. (Doc. 8 at 3.) Two of the plaintiffs, however, are Montana residents, and all three individual plaintiffs allege personal injuries stemming from a vehicle accident that took place in Montana. (Doc. 1); (Doc. 18.) Plaintiffs likely suffered their alleged injuries of negligent infliction of emotional distress in Montana. Plaintiffs' Complaint also includes counts for bad faith and punitive damages under Montana law arising from allegations that State Farm misrepresented the policies' terms and improperly denied coverage for Plaintiffs' personal injury claims. (Doc. 1.) The Court will distinguish between State Farm's alleged breach of the insurance contract and its alleged mishandling of Plaintiffs' submitted claims for purposes of its venue analysis. The Court distinguishes the location where an insurance company and its insured negotiated and purchased the policy itself, *i.e.*, Arkansas, from the location where an insurer makes the coverage decisions, allegedly in bad faith, and communicates them to the insureds, *i.e.*, in Plaintiffs' view at least partially in Montana. *See, e.g.*, *Lorang v. Fortis Ins. Co.,* 192 P.3d 186, 210-211 (Mont.2008).

The record before the Court, on the other hand, does not reveal that all of the State Farm's alleged unfair, fraudulent, or malicious conduct in handling Plaintiffs' claims necessarily occurred only in Montana. (*See* Doc. 8.) Plaintiffs submitted their demand letter to a State Farm Claims Specialist in Georgia, and State Farm asserts that its Arkansas counsel responded to Plaintiffs' demands by advising them that Arkansas law prohibited stacking coverage. (Doc. 8 at 9.) The alleged misrepresentation of coverage would constitute a central piece of Plaintiffs' bad faith claims. It appears that at least some of the operative facts giving rise to the bad faith and punitive damages claims took place outside of Montana, and, at least partially, in Arkansas. The Court views this factor as neutral in its transfer analysis.

**B.     The state most familiar with the governing law**

State Farm contends that the policies' choice of law provision requires application of Arkansas law to any contract interpretation disputes. (Doc. 8 at 8-9.) The choice of law clause provides as follows: "Without regard to choice of law rules, the law of the State of . . . Arkansas will control, . . . in the event of any disagreement as to the interpretation and application of any provision in this policy." (Doc. 9-2 at 38.) The policies also provide that the coverages apply in the "United States of America and its territories and possessions." (Doc. 9-2 at 35.)

Plaintiffs argue that Montana law will control their claims. (Doc. 18 at 16.) The Court need not determine at this juncture whether Montana law or Arkansas law

10

ultimately would apply. Montana's choice of law provisions represent the only rules that clearly will apply to this case: Montana's choice-of-law rules would apply if the case remains in the District of Montana. Montana's choice of law rules also would apply if the Court transfers the suit to the Western District of Arkansas. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir.1993) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

The Court applies Montana's substantive law and federal procedural law when sitting in diversity. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). A state's substantive law includes its choice of law rules. *Muldoon*, 1 F.3d at 966. Montana law directs courts to enforce unambiguous and clear contract terms. *Youngblood v. American States Ins. Co.*, 866 P.2d 203, 205 (Mont. 1993) (citing Mont. Code Ann. § 28-3-401). This rule applies equally to choice of law clauses so long as application of the choice of law provision would not violate Montana public policy. *Youngblood v. American States Ins. Co.*, 866 P.2d 203, 205 (Mont. 1993).

The Court previously has explained that "[a] choice-of-law provision will be ignored in favor of applying Montana law when its application would occasion a result that is clearly forbidden by Montana law." *Dunluck v. Assicurazioni Generali S.P.A.-UK Branch*, 590 F. Supp. 3d 1293, 1301-02 (D. Mont. 2022). Plaintiffs argue that anti-stacking provisions violate Montana

11

public policy. (Doc. 18 at 10.) The Court assumes that, should Arkansas law allow insurance policies to preclude stacked coverage, Montana law would apply to this contract interpretation question. This factor weighs against transferring the case to the Western District of Arkansas.

### C.     Plaintiffs' choice of forum

Plaintiffs have selected the District of Montana as their chosen forum. This factor weighs in favor of denying State Farm's Motion. State Farm points out that Dovia, as the named insured under the policy at issue and representative of the estate of Mark Chandler, resides in Arkansas. (Doc. 8 at 3.) The Court may give a plaintiff's choice less deference when she is neither a resident nor citizen of the forum state. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). In this case, however, two out of three of the plaintiffs remain residents and citizens of Montana. The Court will afford their choice of forum great weight. *Lou v. Belzber*, 834 F.2d 730, 739 (9th Cir. 1987) (citing *Texas Eastern Transmission Corp. v. Marine Office-Appleton Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978)).

### D.     The respective parties' contacts with the forum and contacts relating to the plaintiff's cause of action in the chosen forum

This factor likely does not weigh significantly in favor of transfer. State Farm, an Illinois-based nationwide company insuring consumers likely in all states and territories, likely has the same general contacts in both Montana and Arkansas. Two

of the three plaintiffs reside in Montana, but Dovia, the policyholder and only named insured, resides in Arkansas.

The contacts related to the instant cause of action also do not weigh strongly in favor of transfer. State Farm claims that it sold the policies to Dovia in Arkansas and made the contested coverage determinations through its Arkansas counsel. Plaintiffs correctly point out, however, that the cause of their personal injuries, the accident and Mark's subsequent death, occurred in Montana. (Doc. 18 at 15-16.) These facts suggest that more than a negligible portion of the contacts relating to Plaintiffs' claims occurred in Montana.

### F.      Differences in the costs of litigation in the two forums

State Farm, who bears the burden of demonstrating that transfer serves the interests of justice and convenience, has not presented significant argument regarding the relative costs of litigation in Montana versus Arkansas. (Doc. 8.) State Farm discusses the cost of travel for witnesses, but the Court already has addressed the witness convenience factor. The Court determines that this factor does not weigh strongly in favor of transfer.

### G.      Availability of compulsory process to compel attendance of unwilling non-party witnesses

Federal Rule of Civil Procedure 45 allows service of a subpoena compelling a witness's attendance anywhere within the issuing district or anywhere within 100 miles of the district. Plaintiffs have identified several categories of non-party

witnesses, such as medical staff, law enforcement, and bystanders who observed the accident, who may not prove essential to the contract dispute before the Court. These witnesses likely would, however, remain relevant to Plaintiffs' personal injury claims. (Doc. 18.) These witnesses would remain outside the Court's subpoena power should venue transfer.

The "mere fact a party wishes to call witnesses who reside in a transferee district is not sufficient to warrant transfer, unless the party makes a sufficient showing that the witnesses will not attend, or will be severely inconvenienced if litigation proceeds in the transferor forum." *Anderson v. Thompson*, 634 F.Supp. 1201, 1207 (D. Mont. 1986). The Court has explained that State Farm's identified witnesses likely serve as employees or agents of the company who likely would testify regardless of the inconvenience of the forum. These considerations weigh against transferring venue.

### H.    Ease of access to sources of proof

State Farm concedes that, "Given that electronic record exchange will assist in the parties' access to proof," this factor likely remains neutral. (Doc. 8 at 24.) Plaintiffs make a similar argument. (Doc. 18 at 12.) The Court agrees.

### I.    The existence of a "local interest" in either forum

The Court determines that there does not exist a "significant interest" weighing more strongly for either forum. Plaintiffs Glen and Tracy, as Montana

residents, may represent Montana's interest in those allegedly injured within its borders. Arkansas, on the other hand, would have an interest protecting insurance consumers. Each forum, however, likely shares the interests of the other.

## CONCLUSION

Whether to transfer venue represents a decision left to the sound discretion of the Court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Commodity Futures Trading Commn. v. Savage,* 611 F.2d 270, 279 (9th Cir.1979). The foregoing, case-specific analysis reveals that State Farm has failed to make a "strong showing" that the relevant factors favor a transfer of venue to the Western District of Arkansas. The Court concludes that 28 U.S.C. § 1404(a) does not entitle State Farm to a discretionary change of venue. The Court DENIES State Farm's Motion for these reasons.

## ORDER

Accordingly, **IT IS ORDERED** that:

- State Farm's Motion to Transfer Venue (Doc. 7) is **DENIED**.

DATED this 10th day of July, 2023.

_____
Brian Morris, Chief District Judge
United States District Court